**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-00224-MSK

**JULI IRENE RUBIN,**

     **Applicant,**

**v.**

**THE HONORABLE DAVID ANTHONY ARCHULETA,
BOULDER COUNTY COURT, BOULDER, COLORADO, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,**

     **Respondents.**

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) ("Application") filed, through counsel, by Juli Irene Rubin ("Applicant"). Applicant is challenging the validity of her judgment of conviction of County Court, Boulder County, Colorado case number 15T327. After reviewing the entire record in this action, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

## I. BACKGROUND

On December 9, 2015, the Boulder County Court entered a judgment of conviction against Applicant on a jury verdict finding her guilty of Driving Under the Influence *Per Se*, Driving While Ability Impaired, and Failure to Obey a Traffic Control Device. (ECF No. 1-3 at

1

2).  The trial court imposed a fine of $1,000.00 and sentenced Applicant to 48 hours of

community service.[1]  (ECF No. 1 at 2).

On direct appeal, the Boulder County District Court summarized the facts relevant to

Applicant's conviction as follows:

> Defendant was arrested on suspicion of driving under the influence
> ("DUI") on February 7, 2015. Officer Jeremy Simenson and Corporal Kevin
> Marples of the University of Colorado Police Department stopped Defendant after
> observing Defendant fail to stop at a red turn light. Officer Simenson smelled an
> odor of alcohol on Defendant and observed Defendant had slow, slurred speech
> and red, watery eyes. At the direction of Officer Simenson, Defendant performed
> roadside maneuvers. Officer Simenson observed various clues that caused him to
> conclude an arrest was appropriate for driving under the influence. Officer
> Simensen advised Defendant according to Colorado's Express Consent Law, and
> Defendant elected to take a breath test.  The Intoxilyzer 9000 ("I-9000") testing
> device reported a result of breath alcohol content ("BAC") in the amount of .086
> g/210L.
>
> Defendant was charged with Driving Under the Influence *Per Se*, Driving
> While Ability Impaired, and Failure to Obey a Traffic Control Device. The People
> filed a December 3, 2015 Motion in Limine to exclude evidence challenging the
> Colorado Department of Public Health and Environment's ("CDPHE")
> determination that the I-9000 is a scientifically reliable instrument for testing
> breath alcohol content, to which Defendant filed a Response. The case proceeded
> to trial on December 8 and 9, 2015. At the outset of the trial, the trial court
> granted the People's Motion in Limine regarding the I-9000 and excluded
> evidence challenging that the I-9000 was scientifically reliable. On December 9,
> 2015, the jury found Defendant guilty of Driving Under the Influence *Per Se*,
> Driving While Ability Impaired, and Failure to Obey a Traffic Control Device.

(ECF No. 1-3 at 1-2).

On August 4, 2016, the Boulder County District Court affirmed Applicant's judgment of

conviction.  (*Id.* at 9).  The Colorado Supreme Court denied Applicant's petition for writ of

---

[1] Two circuit courts have recognized that a community service obligation constitutes custody for habeas
corpus jurisdictional purposes under 28 U.S.C. § 2254.  *See Barry v. Bergen County Probation Dept.,* 128
F.3d 152, 161 (3d Cir. 1997); *Nowakowski v. New York,* 835 F.3d 210, 217 (2d Cir. 2016).  *See also*
*Nasious v. Two Unknown B.I.C.E. Agents at the Arapahoe County Justice Center,* 657 F. Supp.2d 1218,
1229  n.5  (D. Colo. 2009) (recognizing that the Third Circuit has held that the habeas custody
requirement was satisfied by a community service obligation).

certiorari on January 17, 2017. (ECF No. 1-5).

Applicant initiated this action on January 25, 2017, by asserting two claims in the Application. First, she contends that the trial court violated her "Sixth Amendment right to present a defense by precluding the presentation of evidence showing that the Certification of the Intoxilyzer 9000 was false in that the required steps set forth in 5 CCR 1005-2(2013) had not been completed." (ECF No. 1 at 8). Applicant also asserts that the trial court violated her "rights under the Sixth and Fourteenth Amendments in instructing the jury as to the Intoxilyzer 9000." (*Id.* at 9).

On March 21, 2017, the Court rejected Respondents' defense of exhaustion, and ordered Respondents to file an answer that fully addresses the merits of both claims along with the complete record of the state court proceedings. (*See* ECF No. 9). Respondents submitted the state court record (ECF No. 12), and filed an Answer to Application (ECF No. 13) ("the Answer"). On May 23, 2017, Applicant filed a Response to Colorado's Answer (ECF No. 16) ("the Traverse").

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to

28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply

a rule of law that was clearly established by the Supreme Court at the time her conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law

"refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in
> cases where the facts are at least closely-related or similar to the
> case *sub judice*.  Although the legal rule at issue need not have had
> its genesis in the closely-related or similar factual context, the
> Supreme Court must have expressly extended the legal rule to that
> context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry under § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing
> law set forth in Supreme Court cases"; or (b) "the state court
> confronts a set of facts that are materially indistinguishable from a
> decision of the Supreme Court and nevertheless arrives at a result
> different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d
> [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically

different,' 'opposite in character or nature,' or 'mutually
opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of
clearly established federal law when it identifies the correct
governing legal rule from Supreme Court cases, but unreasonably
applies it to the facts. *Id.* at 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective

inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather that

application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable'

when most reasonable jurists exercising their independent judgment would conclude the state

court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

[E]valuating whether a rule application was unreasonable requires
considering the rule's specificity. The more general the rule, the
more leeway courts have in reaching outcomes in case-by-case
determinations. [I]t is not an unreasonable application of clearly
established Federal law for a state court to decline to apply a
specific legal rule that has not been squarely established by [the
Supreme] Court.

*Harrington v. Richter*, 562 U.S 86, 101 (2011) (internal quotation marks and citation omitted).

In conducting this analysis, the Court "must determine what arguments or theories supported or .

. . could have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the

holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the

Court to grant a writ of habeas corpus only if the relevant state court decision was based on an

unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are

correct and the applicant bears the burden of rebutting the presumption by clear and convincing

evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v.

Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not

procedurally barred, the Court must review the claim *de novo* and the deferential standards of §

2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law." *Bland

v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the

trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-

22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht*

anytime it finds constitutional error in a state court proceeding regardless of whether the state

court found error or conducted harmless error review). Under *Brecht*, a constitutional error does

not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on

the jury's verdict. *Id.*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the

court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459

F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

## III. ANALYSIS

### A. Claim One

Applicant asserts the trial court violated her constitutional right to present a defense when it excluded evidence showing that the certification of the Intoxilyzer 9000 ("I-9000") was fraudulently issued by the Colorado Department of Public Health and Environment—Laboratory Services Division ("CDPHE"), because the CDPHE did not complete the required steps set forth in 5 Colo. Code Regs. § 1005-2:1. (ECF No. 1 at 8). Respondents contend the state court properly excluded evidence challenging the administrative process employed by the CDPHE to certify that the I-9000 in general is a scientifically reliable instrument because admission of such evidence would confuse the issues and mislead the jury. (ECF No. 13 at 15-18).

The Court must review whether the state appellate court's determination of this issue was contrary to, or an unreasonable application of clearly established federal law. As further explained below, the Court finds that the state appellate court reasonably applied the relevant standards established by the United States Supreme Court, and, appropriately concluded that there was no federal constitutional error regarding the trial court's exclusion of evidence.

### 1. Applicable federal law

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . ., or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . ., the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted). That includes the right to present relevant evidence. *United States v. Scheffer,* 523 U.S. 303, 308 (1998). Of course, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citing Fed. R. Evid. 403); *see also Crane*, 476 U.S. at 689-90 (recognizing that "the constitution leaves the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"). The United States Supreme Court, therefore, has recognized that the introduction of relevant evidence can be limited by the State for valid reasons under well-established rules of evidence, but "[i]n the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." *Crane,* 476 U.S. at 689-91 (stating that "we have never questioned the power of States to exclude evidence though the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted"); *see also Montana v. Egelhoff,* 518 U.S. 37, 53 (1996) (recognizing that a constitutional right to present a complete defense does not provide "an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of

evidence"); *Scheffer,* 523 U.S. at 308 (holding that the rules of evidence restricting the ability to present a defense cannot be "arbitrary" or "disproportionate"); *Holmes,* 547 U.S. at 326 (noting that "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote" trial judges may rely on well-established rules of evidence, including Fed. R. Civ. 403 to exclude relevant evidence); *Nevada v. Jackson,* 569 U.S. 505, 509 (2013) (observing that "[o]nly rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.").

### 2. State court proceedings

Before trial, the prosecution filed a motion in limine to exclude evidence challenging the CDPHE's determination that the I-9000 is a scientifically accurate and reliable instrument for testing breath alcohol content. State Court R., at 129-36, 12/3/15 First Motion In Limine: I9000. The trial court granted the motion in limine and excluded defense evidence challenging the scientific reliability of the I-9000 device in general. State Court R., 12/8/15 Tr. at 5-14. Applicant made an offer of proof to the trial court that the Director of Laboratory Services Division of the CDPHE and signator on the certificate for the I-9000 used during Applicant's arrest would be called to testify that there is no document establishing "scientific standards of performance" as required by 5 Colo. Code Regs. § 1005-2:1, 4.1.3.1. *Id.* at 14-15. Applicant also proffered the "standard operating procedures for use of the Intoxilyzer 9000" as establishing the "scientific standards of performance." *Id.* at 15-17.

On direct appeal, Applicant asserted a denial of her right to present a defense when the trial court prevented "the Defendant from challenging the alleged test result by showing that the

certification was fraudulent as no standards of performance as required by 5 C.C.R. 1005-2(2013), § 4.1.3.1, had been established and therefor the certification of the instrument in question as complaint with 5 C.C.R. 1005-2(2013) was false." (ECF No. 1-2 at 12-14). She further argued that the certificate providing that the I-9000 was scientifically reliable and accurate "creates an irrational determination prohibited by law." (*Id.* at 15).

The Boulder County District Court, sitting as an appellate court, construed the "precise issue" as "whether Defendant should have been allowed to present evidence challenging whether the CDPHE had established scientific standards of performance." (ECF No. 1-3 at 3). The state appellate court determined that while the establishment of scientific standards of performance to certify the accuracy of the I-9000 in general has "some relevance . . . such general attack on the administrative actions or inactions of the CDPHE would confuse the issues at trial, which confusion substantially outweighs the probative value of such evidence under C.R.E. 403." (*Id.* at 3-4). The state appellate court further explained that nothing precluded Applicant from offering evidence concerning the accuracy of the specific I-9000 used during her arrest, including attacking the accuracy of the testing device used, the qualifications of the operator, or how the test was administered. (*Id.* at 4). In finding no federal constitutional error, the state appellate court stated as follows:

> [t]he Supreme Court of Colorado held that the proper inquiry to determine if the exclusion of defense impeachment evidence rises to the level of federal constitutional error is "whether the trial court's evidentiary ruling, in and of itself, deprived the defendant of any meaningful opportunity to present a complete defense." *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009). However, not every restriction on a defendant's attempt to challenge the reliability of evidence, nor every erroneous evidentiary ruling in favor of such a restriction, amounts to federal constitutional error. *Id*. at 1062. The trial court has "wide latitude" to make such restrictions by way of evidentiary rulings. *Id*. The standard for determining whether the defendant's right to present a defense has been violated by a trial court's evidentiary ruling depends upon his opportunity to subject the

prosecutor's case to "meaningful adversarial testing." *Id*. A defendant's right is violated only when he is "denied virtually his only means of effectively testing significant prosecution evidence." *Id*.

Here, the Court's exclusion of evidence regarding CDPHE's "scientific standards of performance," or lack thereof, did not deprive Defendant of the "only means of effectively testing" the accuracy of her BAC test result. The accuracy of Defendant's BAC test result is not dependent solely upon the scientific standards of performance governing the certification of the I-9000, but depends upon whether the device was operating properly and whether the test was properly administered on the night in question.

As to the specific device's operation, the record contains the "Intoxilyzer 9000 (I-9000) Instrument Performance Report" for Defendant's EBAT, which contained the calibration verification record, solution change record, calibration adjustment record, 60-day exception message record, certification record, and maintenance record for the I-9000, serial number 90-000367 used on Defendant. Defendant was not deprived of meaningful adversarial testing of the accuracy of the I-9000, number 90-000367, that was used on Defendant. Defendant also had the opportunity to cross-examine Officer Simensen, the administrator of the BAC test, in order to challenge the working order of the I-9000, as well as Officer Simensen's ability to properly operate the device. Defendant was therefore not barred from "meaningful adversarial testing" of the accuracy of the BAC determination. Accordingly, the Court finds no federal constitutional error.

(*Id.* at 4-5).

### 3. AEDPA standard of review

The Court finds the Boulder County District Court's decision that the trial court did not violate Applicant's right to present a defense when it excluded evidence challenging the certification of the I-9000 in general, was neither contrary to, nor an unreasonable application of clearly established federal law.

As noted above, the relevant Supreme Court law consists of the general principles that criminal defendants must be given a meaningful opportunity to present a complete defense, but that "well-established rules of evidence permit trial judges to exclude evidence if its probative

value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *See e.g., Holmes,* 547 U.S. at 326.

Here, the trial court ruled in favor of the prosecution in excluding Applicant's proffered evidence regarding the validation and certification of the I-9000 as a scientifically reliable testing device based on the CDPHE's "scientific standards of performance" or lack therof. State Court R., 12/8/15 Tr. at 5-17. The state appellate court agreed with the trial court's decision, finding that the probative value of this evidence was outweighed by the probability of confusing the issues and misleading the jury. (ECF No. 1-3 at 4-5). The state appellate court further held that exclusion of this evidence did not run afoul of federal law concerning a defendant's right to present a defense based on the evidentiary ruling at trial. (*Id.*)

Applicant has not demonstrated that the trial court's decision to exclude evidence pursuant to a well-established rule of evidence was arbitrary and disproportionate. *Holmes,* 547 U.S. at 324 (holding that the right to present a defense is abridged by evidence rules that are arbitrary or disproportionate to the purposes they are designed to serve). Supreme Court precedent makes clear that Applicant does not have an unfettered right to admit all evidence, and that she must comply with established rules of evidence. *Id.* at 326; *Montana,* 518 U.S. at 53; *see also Dodd v. Trammell,* 753 F.3d 971, 985-86 (10th Cir. 2013) ("[T]he Supreme Court has never questioned the traditional reasons for excluding evidence that may have some relevance" and has "only rarely" held that such a right "was violated by the exclusion of defense evidence under a state rule of evidence."). Citing Colorado Rule of Evidence 403, the state courts exercised their "wide latitude" to exclude evidence concerning the CDPHE's certification process for the I-9000 in general. This decision is consistent with clearly established federal law,

which has recognized that the National Highway Traffic Safety Administration has certified the accuracy of the Intoxilyzer in admitting its test results at trial. *See California v. Trombetta,* 467 U.S. 479, 489 n.9 (1984) (recognizing the state department of health's role in certifying the Intoxilyzer as equipment of proven accuracy and reliability pursuant to accepted scientific methods). *See also United States v. Mason,* 143 S. Supp.2d 1241, 1245-46 (D. Colo. 2001) (explaining that "if the method of testing a breath sample is generally accepted in the scientific community," a failure to strictly comply "with Department of Health regulations does not invalidate otherwise valid and reliable testing methods" in admitting the breath test results).

Moreover, as explained by the state appellate court, Applicant's proffered evidence concerning the certification process for the I-9000 in general was not probative of the accuracy of the specific I-9000 instrument used during her arrest, and did not preclude Applicant from introducing other evidence challenging the specific I-9000 used, had she chosen to do so. *See e.g., Miskel v. Karnes,* 397 F.3d 446, 453-55 (6th Cir. 2005) (denying habeas claim alleging a violation of the constitutional right to present a defense where the trial court refused to admit proffered testimony challenging the general reliability of the breath test device because there is no clearly established Federal law on the issue, and the trial court's decision was not contrary to, or an unreasonable application of clearly established Federal law). The state appellate court's assessment of the evidence was not irrational.

In light of the AEDPA deference this Court must apply to the state court determination, the Court cannot find that the Boulder County District Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The Court concludes

that the state appellate court's decision was not contrary to, or an unreasonable application of

clear Supreme Court precedent. Therefore, Applicant is not entitled to habeas relief on claim

one.

## B. Claim Two

Applicant asserts that the trial court violated her rights under the Sixth and Fourteenth

Amendment in instructing the jury as to the I-9000. (ECF No. 1 at 9). She challenges the

following jury instruction:

> There has been evidence introduced before you that an analysis of the defendant's breath was made by means of an Intoxilyzer to determine the amount of alcohol in the defendant's breath at the time of the alleged offense or within a reasonable time thereafter.
>
> The court takes judicial notice that such testing device is a scientifically and legally reliable and accurate device for determining the alcoholic content of the breath. A judicially noticed fact is one which the court determines is not subject to reasonable dispute and which the court has accepted as true. You may or may not accept this fact as true. You may weigh it as you would any other evidence.
>
> However, before you accept the results of such test, it must be established by the prosecution as follows:
>
> • That the testing device was certified by the Colorado Department of Public Health and Environment;
> • That the testing device was working properly;
> • The operator was qualified to conduct the test;
> • The test was administered following proper procedures.
>
> If the jury finds that there was a failure to strictly comply with the rules and regulations of the Department of Health in the obtaining of a breath sample, the jury may give such failure such weight as the jury deems appropriate in evaluating the weight, if any, to give the breath test.

(*Id.* at 9-10); State Court. R., at 17, Jury Instruction No. 16.

Respondents contend the challenged jury instruction was proper because it stated that the I-9000 is a scientifically and legally reliable and accurate device for determining the alcohol content of breath, which is a legislative fact under the state statutory scheme that gives power to the CDPHE to certify these machines.  (ECF No. 13 at 19).  Respondents further argue this instruction properly placed the burden on the prosecution to show that the I-9000 was certified by the CDPHE, that it was working properly, that the operator was qualified to administer the test, and that the test was administered following proper procedures.  (*Id.* 19-22).  Respondents also assert that the challenged jury instruction contained a permissive presumption, because "it only informs the jury that the class of device is generally reliable and accurate, but that they may accept or reject that fact," and it "requires proof that the Applicant's individual test was properly administered by a certified operator on a certified machine."  (*Id.* at 22-23).

### 1. Applicable federal law

The Due Process Clause requires the prosecution to prove every element of a charged offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).  To demonstrate a constitutional error from a jury instruction in a state criminal trial, a habeas petitioner must show (1) an "ambiguity, inconsistency, or deficiency" in the instruction, and, (2) that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotation marks and citations omitted).  *See also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (explaining that the constitutional inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard.").  However, "not

every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

In making this determination, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A "slight possibility" that the jury misapplied the jury instruction is not enough. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000). "[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and . . . due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that in considering a habeas claim based on an improper jury instruction, the court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable [or] erroneous") (quotations omitted)). In short, the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

### 2. State court proceedings

On direct appeal, the Boulder County District Court provided the following analysis of Applicant's jury instruction claim:

> Defendant argues the jury was improperly instructed as to the accuracy of the EBAT results, since there is no presumption of admissibility for an I-9000 result under Colorado law.

[ . . .]

The trial court took judicial notice of the scientific reliability and accuracy of the *device*, but gave no such instruction as to how the court viewed the *results*. In fact, the instruction clearly states that before the jury accepts the results, it must find the prosecution has proved the testing device was certified by CDPHE, the device was working properly, the operator was qualified to conduct the test, and the test was administered following proper procedures. Further, no presumption flows from the judicially noticed fact in Jury Instruction 16. The instruction plainly instructs the jury that it may or may not accept this fact as true and should weigh it as it would any other evidence. Therefore, the Court finds the trial court did not improperly instruct the jury that there is a presumption of admissibility for an I-9000 result under Colorado law. Accordingly, the Court finds no violation of due process.

Defendant argues it was improper for the trial court to take judicial notice of the accuracy and reliability of the testing instrument.

Pursuant to section 42-4-1301(6)(c), C.R.S, in all judicial proceedings in any court of this state concerning alcohol-related traffic offenses, "the court shall take judicial notice of methods of testing a person's alcohol or drug level and of the design and operation of devices, as certified by the department of public health and environment, for testing a person's blood, breath, saliva, or urine to determine such person's alcohol or drug level." However, such "shall not prevent the necessity of establishing during a trial that the testing devices used were working properly and that such testing devices were properly operated." § 42-4-1301(6)(c), C.R.S.

Further, as stated in 5 C.C.R. § 1005-2:1.2, "The Colorado department of public health and environment has determined that results obtained from the certified EBAT instrument are scientifically accurate, precise, and analytically reliable when the certified EBAT instrument is properly operated as described in this rule." Rules and regulations promulgated by a governmental agency pursuant to the agency's statutory authority and published in an official state publication, such as Code of Colorado Regulations, may be judicially noticed. *One Hour Cleaners v. Indus. Claim Appeals Office of State of Colo.*, 914 P.2d 501, 504 (Colo. App. 1995).

The Colorado Supreme Court, in *Bowers*, explained that the legislature delegated the authority "to prescribe scientifically valid procedures for chemical testing that will . . . provide sufficient reliability to the testing method as to avoid the necessity of formal evidentiary proof on this aspect of the testing process." 716 P.2d at 474 ("The legislature obviously believed that the testing methods prescribed . . . would be reasonably reliable, thus justifying the court in taking

judicial notice of the testing method and thereby dispensing with the requirement of formal proof on that matter.").

Based on the CDPHE's determination that the EBAT instruments are scientifically reliable when certified, and the legislature's authorization for the court to take judicial notice of the methods of testing a person's alcohol and of design and operation of devices, the Court perceives no error in the trial court's judicial notice of the reliability of the I-9000 and the jury instruction to such effect. The jury instruction accurately states the law that, while the court takes judicial notice of the methods of testing and operation of devices, the prosecution still bears the burden to establish the devices were working and operated properly. *See* § 42-4-1301(6)(c), C.R.S.

(ECF No. 1-3 at 5-7).

### 3. AEDPA standard of review

The Boulder County District Court denied Applicant relief for her federal due process claim by deciding that there was no federal law error at all. Therefore, the deferential AEDPA standard of review applies. *See Eizember v. Trammell*, 803 F.3d 1129, 1138 n.1 (10th Cir. 2015).

The Boulder County District Court explained that pursuant to C.R.S. § 42-4-1301(6)(c), a court "shall take judicial notice of methods of testing a person's alcohol or drug level and of the design and operation of devices, as certified by the department of public health and environment." (ECF No. 1-3 at 6). The state appellate court further noted that the Colorado Supreme Court has determined that based on the statutory scheme, a court may take judicial notice of the testing method because the legislature delegated the authority "to prescribe scientifically valid procedures for chemical testing that will . . . provide sufficient reliability to the testing method as to avoid the necessity of formal evidentiary proof on this aspect of the testing process." (*Id.*). The Boulder County District Court then determined that the trial court's jury instruction:

- "clearly states that before the jury accepts the result, it must find the prosecution has proved the testing device was certified by CDPHE, the device was working properly, the operator was qualified to conduct the test, and the test was administered following proper procedures;"

- "plainly instructs the jury that it may or may not accept [the judicially noticed fact] as true and should weigh it as it would any other evidence;"

- "did not improperly instruct the jury that there is a presumption of admissibility for an I-9000 result under Colorado law;" and

- "accurately states the law that, while the court takes judicial notice of the methods of testing and operation of devices, the prosecution still bears the burden to establish the devices were working and operated properly."

(ECF No. 1-3 at 6-7).

These determinations of state law are binding on this federal habeas Court. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (recognizing that "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Applicant has not shown that the instruction contained "some 'ambiguity, inconsistency, or deficiency,'" as required by Supreme Court law. *See Waddington*, 555 U.S. at 190-91.

Further, the jury was instructed on the elements of Driving Under the Influence Per Se and Driving While Ability Impaired under Colorado law, and there was sufficient evidence to support Applicant's conviction. State Court R., at 10-13, Jury Instruction Nos. 9-12; 12/9/15 Tr. at 97-111. Namely, testimony that she ran a red light, and that the officer who arrested her observed bloodshot eyes, slurred speech, the odor of alcohol in her car, an inability to accurately complete a task implicating short term memory in her car, and a failure of the standardized field sobriety tests he administered to Applicant. State Court R., 12/9/15 Tr. at 21-46. As such, there

is no reasonable likelihood that the jury applied the instruction regarding the I-9000 in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

Applicant cannot obtain federal habeas relief on her second claim.

## IV. Conclusion

In summary, the Court finds that Applicant is not entitled to relief on her claims because she fails to demonstrate the state court rulings were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice.  It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated this 22d day of March, 2018.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge

21